EMILY GALE LOWERY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57646.   Promulgated November 25, 1932.

*James F. Hubbell, Esq.*, for the petitioner.
*Nathan Gammon, Esq.*, for the respondent.

**OPINION.**

VAN FOSSAN: The only question presented in this case is whether or not the assignment of the income from the life interest of the petitioner in the estate of James L. Lowery relieves her from paying the income tax thereon.

In *Hazel T. Power*, 23 B. T. A. 428, we said:

The rule is well established that * * * the liability for income tax upon future income or profits which will or may accrue to the assignor by reason of the ownership of or an interest in property can not be avoided by the assignor or grantor through the granting or assignment of such income or profits to another.

When the owner of a property right assigns merely the income arising therefrom and retains the other incidents of ownership which are essential factors in the production of income, he, and not the assignee, must pay the Federal tax on such income. *Bing* v. *Bowers*, 22 Fed. (2d) 450; affd., 26 Fed. (2d) 1017; *J. V. Leydig*, 15 B. T. A.

124; affd., 43 Fed. (2d) 494; *Hazel T. Power, supra; E. D. Smith et al., Executors,* 25 B. T. A. 291.

By the terms of the third paragraph of James L. Lowery's will the petitioner received " the possession, management, and the control and the rents, profits, use and income " of his residuary estate. All of those elements combined constituted the property rights she acquired in her husband's estate. Of them she assigned only one, the income, to her children and grandchildren. The will provides specifically that she should possess, manage, control and use the residuary estate of the testator " for and during her natural life." Her life estate, therefore, was so established and defined, and in order to divest herself of her entire property rights she must include in the instrument of conveyance or assignment all the elements of ownership of such estate which were specifically set forth in and granted to her by the will. She did not do so, but chose instead to give to her children and grandchildren only the income flowing from the estate, which she still held. Under such circumstances we must conclude that the income in question is taxable to her.

The petitioner, on deposition, offered testimony tending to show that she had not had the actual possession of the residuary estate of James L. Lowery, nor had she exercised management and control over it. The will created the estate to which the petitioner was entitled. If she elected to permit others to manage it for her, she can not thus be absolved from the responsibilities and legal burdens of its ownership.

The petitioner contended that the instrument of assignment is ambiguous in its terms and offered evidence to explain away such asserted ambiguity. We can perceive no such ambiguity. The petitioner set forth that she was entitled to the income of the residuary estate of her deceased husband and then proceeded to assign and transfer that income to her children and grandchildren in certain stated proportions. We must be governed by the plain words of the instrument itself and conclude that only the income from her life estate was assigned.

Reviewed by the Board.

*Decision will be entered for the respondent.*

BLACK dissents.

LOVE, dissenting: Had I been called upon to write this case and render a decision thereon, I would have felt impelled, in view of prior decisions of the Board, as well as decisions of some of the higher courts, including the Supreme Court, to have decided the case as it is decided in the prevailing opinion. But, as is well known, I have consistently challenged the correctness of such prior decisions of the Board and of the courts.

I have been requested to present my views in detail, and, as an individual member of the Board, I feel at liberty to do what I would not feel at liberty to do were I writing an opinion and decision to be promulgated as the decision of the Board. In other words, this dissent is a challenge to the soundness and correctness of the decisions of the courts, and the Board, which constitute a controlling, authoritative basis for the prevailing opinion. If I have a hope or purpose at all, it is that the higher courts may correct what I deem to be erroneous decisions, which are now controlling precedents.

The fundamental doctrine or theory of the instant case, as well as those court and Board decisions upon which the instant case is based, is that one may not assign the usufruct of a corpus estate without assigning also that corpus from which such usufructs flow; that is, the fruit can not be separated from the tree that produces the fruit. The ramifications of the tentacles of that fundamental doctrine reach out and affect hundreds of the ordinary, daily business transactions of business life.

It is said that one may not assign the whole or any part of his future salary under a specified employment contract. It is said that a partner may not assign the whole or any part of his distributive share of the partnership profits. When one acquires, by will, or a trust instrument, the right to receive the rent on a certain piece of real estate, or the dividend on a certain block of stock during a period of time in the future, for life, or a term of years, what he acquires by and as a gift, is the *right* to receive that income, and that right is property, and in the ordinary sense of the word, is income, but, being acquired by gift, under the statute is not taxable income. The annual payments made to him as a result of that right are not gifts, but are taxable income.

It is said, as in the instant case, that the holder of such a right may not assign it to another and retain in himself title to any part of the corpus from which such income flows. There are many phases of the general principle now under consideration. In discussing the instant case, I shall assume:

1. That what the mother assigned to her children was the right, which she acquired, by and through her deceased husband's will, to receive, for her own use and benefit, the rents and profits flowing from her husband's residuary estate during her natural life.

2. That such assignment was and is irrevocable.

The instrument of assignment clearly indicates such a purport, and it is so treated in the prevailing opinion.

The Sixteenth Amendment to the Constitution does not authorize Congress or any judicial tribunal to impose a tax on one person which is based on the income of another person. Hence, the vital

question to be determined in any given case is, Whose is the income sought to be taxed? It matters not what the source of the income is, the vital question is, Whose income is it?

In the instant case, it is not claimed that under the laws of New York the assignment in question was void and transferred no title to the income as and when received. New York courts recognize such transactions as valid and binding. It is to the state laws and not to the Federal laws that we must look to determine who owns certain property.

Notwithstanding the fact that there are decisions holding that he who earns a salary is the one who must pay the tax thereon, it is now settled law that, in Texas, a wife owns one-half her husband's salary and may include the same in her return for income tax purposes. Notwithstanding the fact that it has been held that a partner may not assign and thus divide his distributive share of the partnership profit, it is now settled law that a wife in Texas owns and may include in her income tax return one-half of such income. The same may be said with reference to rents or profits flowing from the separate property of the husband, and such is the case not only in Texas, but in all the community property states.

It is said that in the community property states the wife is entitled to share in such incomes by operation of law and not by contract. I do not believe it will be contended by anyone that a title acquired by and through a contract is any less a legal title than one acquired by operation of law. A title emanating from and through a will is no less a legal title than one derived by and through the laws of descent and distribution. They are both legal titles and stand on equal footing. Moreover, since when, in the history of American jurisprudence, has a contract been deemed less sacred than a statute?

It has been the burden of the courts for more than an hundred years to impress upon the American people the sanctity and inviolability of contracts. It is only when the collection of income tax is involved that rights derived through contracts have been discounted and ignored.

I want to point out and emphasize the fact that in none of the cases which I have in mind, including the instant case, has the bona fides of the contract been questioned. In the instant case, I do not perceive how it can be contended for a moment that the mother did not irrevocably pass from herself to her children the right to receive the income in question, and that from the moment that document was signed, sealed and delivered, she had no more title to such income than any other person, a total stranger to the whole transaction, and that as and when such income was received by those children, it was their income and taxable to them.